UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AVANTOR PERFORMANCE MATERIALS, INC. | : : : : |
| Plaintiff, | : Civil Action No. 15-3540 (DEA) : |
| v. | : **OPINON** : |
| UNITED STEEL, PAPER AND RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION LOCAL 04-729 | : : : : : |
| Defendant. | : : |

ARPERT, Magistrate Judge

This matter comes before the Court on a motion by defendant United Steel, Paper and Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union Local 04-729 ("Defendant" or the "Union") to compel arbitration and dismiss this matter. Plaintiff Avantor Performance Materials, Inc. ("Plaintiff" or "Avantor") has opposed the motion and cross moved to for a declaration that the underlying dispute is not arbitrable.[1] The Court decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, Defendant's motion is denied.

**I. Background**

It appears that the relevant facts in this matter are not in dispute. According to the Complaint, Plaintiff operates a manufacturing and research facility in Phillipsburg, New Jersey

---

[1] Although procedurally deficient in that, *inter alia*, Plaintiff has not filed a Notice of Cross Motion, Defendant construes Plaintiff's opposition as a cross motion, *see* ECF No. 16 at 1 ("The Union and the Company have moved and cross moved to compel and bar arbitration of the grievance respectively."), and the Court shall construe Plaintiff's papers this way as well, *see* ECF No. 15 at 12 (Plaintiff "requests that this Court enter an Order finding that the Grievance #14-4892 is not arbitrable.")

(the "Phillipsburg Plant"). Defendant Union represents the production and maintenance employees ("P&M employees") at the Phillipsburg Plant, as well as all laboratory technicians, chemical specialists, and laboratory assistants ("Technical Employees") at the plant. Retirement benefits provided to Plaintiff's employees include a 401(k) plan. As described below, dispute has arisen between the parties as a result a modification made by Plaintiff to the 401(k) plan.

Plaintiff and Defendant are parties to collective bargaining agreements ("CBAs") with respect to the P&M Employees and the Technical Employees. Both CBAs contain identical sections entitled "Present Benefits" that include the following provision with respect to the 401(k) plan:

> The employees covered by this agreement will be allowed to participate in the Company 401(k) Retirement Savings and Investment Plan effective July 1, 2008. The employees' entitlements to benefits and/or contributions under this plan shall be governed in all respects by the provisions of such plan and the administrative rules as set forth and interpreted by the Plan Administrator. The Company retains the right to amend or modify the plan in any way, at any time, without bargaining with the Union. The Union agrees that no grievance can be filed regarding the Company sponsored 401(k) plan and that if a grievance is filed the Union agrees that such grievance will not be subject to arbitration. The Company will maintain a 401(k) plan that covers all eligible employees that is substantially similar to the previous plans.

ECF No. 15-2, at Article 16, paragraph 8; ECF No. 15-3, at Article 18, paragraph 9.

Each of the CBAs also contain identical grievance/arbitration procedures. A grievance is defined as "any violation of the terms of the Agreement, difference of opinion in its interpretation, or disciplinary action taken without just cause." ECF No. 15-2, at Article 14, Section 1; ECF No. 15-3, at Article 16, Section 1. Under the multi-step grievance procedures set forth in the CBAs, the third step is an appeal to arbitration.

Prior to 2015, Plaintiff made a 3% contribution to each employees' 401(k) account in addition to matching certain employee contributions. Beginning in 2015, Plaintiff discontinued

the 3% contribution.  In October 2014, after receiving notice of the change in contribution, Defendant filed a grievance (Grievance #14-4892) on behalf of the P&M Employees and the Technical Employees.  Defendant argued that in eliminating the 3% contribution, Plaintiff breached its agreement in the CBAs to "maintain a 401(k) plan that covers all eligible employees that is substantially similar to the previous plans."  ECF No. 15-2, at Article 16, paragraph 8; ECF No. 15-3, at Article 18, paragraph 9.  Plaintiff denied the grievance and the Union appealed.  Plaintiff again denied the grievance, taking the position that the grievance was not subject to the grievance/arbitration procedure under the CBAs, citing the parties' agreement that "no grievance can be filed regarding the Company sponsored 401(k) plan."  *See id.*  Plaintiff further contended that the CBAs expressly permitted Plaintiff to modify the 401(k) plan without negotiating the modification with the Union.

Thereafter, the Union sought to arbitrate the grievance.  In April 2015, Plaintiff received notice from the American Arbitration Association ("AAA") that Defendant had demanded arbitration.  Plaintiff advised AAA that it had not agreed to arbitrate the dispute and, therefore, AAA did not have jurisdiction to conduct an arbitration.  In May 2015, Plaintiff filed this action seeking a declaration that the grievance is not arbitrable and to enjoin the arbitration.  Defendant has counterclaimed, seeking a declaration that Plaintiff violated the CBAs and compelling Plaintiff to maintain the 401(k) plan in accordance with the CBAs.  An arbitration is presently scheduled for December 14, 2015.

**II. Analysis**

Under the Federal Arbitration Act ("FAA"),

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an

>agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. There are two questions that a court examines when addressing a motion compel arbitration. First, the Court must first determine whether a valid agreement to arbitrate exists. *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007). An agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation or any contract." 9 U.S.C. § 2. Although the FAA establishes a "strong federal policy in favor of compelling arbitration," *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000), the presumption in favor of arbitration applies "only when both parties have consented to and are bound by the arbitration clause," *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014).

Second, a court must decide whether the dispute falls within the scope of the arbitration agreement. It is well established that "the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2425, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA requires a court to stay a proceeding in favor of arbitration "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3.

As to the first question, there appears to be no dispute that the CBAs contain a valid agreement to arbitrate. The CBAs set forth a multi-step "Grievance Procedure." Under "Step One," a "first step meeting" is held, a written grievance is submitted to Avantor, and Avantor responds in writing. ECF No. 15-2, at Article 14; ECF No. 15-3, at Article 16. If the grievance is not settled satisfactorily at this step, the parties move to "Step Two," which involves a "Second Step meeting," that includes certain Union officials. After this meeting, Avantor provides a written answer. *Id.* If the matter is not settled at Step Two, either party may "make a … request for an arbitration panel." *Id.* The parties then select an arbitrator who "shall hear and decide the case without delay." *Id.*

Consequently, the issue presently before the Court turns on the second step of the analysis, *i.e.*, whether the parties' dispute falls within the scope of their agreement to arbitrate. As noted above, the CBAs define a "grievance" as "any violation of the terms of [the CBA], difference of opinion in its interpretation, or disciplinary action taken without just cause." ECF No. 15-2, at Article 14, Section 1; ECF No. 15-3, at Article 16, Section 1. There is no dispute that this is a "grievance," as defined under the CBA, as the Union is alleging that Plaintiff violated its agreement in the CBAs to "maintain a 401(k) plan that covers all eligible employees that is substantially similar to the previous plans." ECF No. 15-2, at Article 16, paragraph 8; ECF No. 15-3, at Article 18, paragraph 9. The next question then is whether this grievance is subject to the grievance/arbitration procedure in the CBA.

Specifically with respect to the 401(k) plan, the CBAs provide as follows: "The Union agrees that no grievance can be filed regarding the Company sponsored 401(k) plan and that if a grievance is filed the Union agrees that such grievance will not be subject to arbitration." ECF No. 15-2, at Article 16, paragraph 8; ECF No. 15-3, at Article 18, paragraph 9. Plaintiff argues

5

that this takes the present dispute outside of the scope of the parties' agreement to arbitrate. Indeed, where "language expressly excludes certain issues or categories of grievances from an otherwise broad arbitration clause, … the exclusion must be enforced." *United Gov't Sec. Officers of Am., Int'l Union v. Exelon Nuclear Sec., LLC*, 24 F. Supp. 3d 460, 466 (E.D. Pa. 2014)

Defendant, on the other hand, contends that this exception to the grievance/arbitration procedure applies only to "issues of [401(k)] Plan design." ECF No. 13-1 at 6. Defendant bases this reading of the provision on (1) "the presumption of arbitrability that inheres in [the] broad arbitration clause"; (2) placement of the "substantially similar" clause after the exclusion clause; and (3) "the substance of the deal between the parties," in which Plaintiff "would wish to reserve to itself the right to administer and modify the Plan" and Defendant receives assurance that the benefits provided would remain "substantially similar." ECF No. 13-1 at 6. Defendant supports its motion with the language of the CBAs and attorney argument.

Ordinary principles of contractual construction apply to the interpretation of agreements to arbitrate, and the contract containing the arbitration agreement must be read as a whole. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173-75 (3d Cir. 2014); *Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776*, 595 F.3d 128, 131–32 (3d Cir. 2010). "[T]he plain language of the contract controls," *CardioNet*, 751 F.3d at 172–73, as "arbitration is still a creature of contract and a court cannot call for arbitration of matters outside the scope of the arbitration clause." *Rite Aid*, 595 F.3d at 131. In the present matter, the issue boils down to whether the Union's grievance is one "regarding the Company sponsored 401(k) plan." If it is, it falls outside of the scope of the CBAs' grievance/arbitration procedure. *See* ECF No. 15-2, at Article 16, paragraph 8; ECF No. 15-3, at Article 18, paragraph 9.

6

The CBAs provide that Plaintiff "retains the right to amend or modify the plan in any way, at any time, without bargaining with the Union." ECF No. 15-2, at Article 16, paragraph 8; ECF No. 15-3, at Article 18, paragraph 9. Immediately following this sentence is the sentence that excepts matters "regarding the Company sponsored 401(k) plan" from the scope of the grievance/arbitration procedure. *Id.* Immediately following this sentence is a sentence that makes clear that Plaintiff's right to amend or modify the plan is not unfettered, as it requires Plaintiff to maintain a 401(k) plan that is "substantially similar" to previous plans.

The Court finds that the plain language of the CBAs require denial of Defendants' motion. The central focus of the relevant language is on Plaintiff's ability to make changes to the 401(k) plan and the limitations on such changes. The CBAs use broad language in carving out the exception to the arbitration requirement, excepting matters "regarding the 401(k) plan." Given the placement of the exception within the CBA and even within the paragraph itself, at a minimum the exception must include all issues relating to the modification or amendment of the 401(k) plan and the limitations placed thereon. As the gravamen of the Union's grievance is whether Plaintiff's modification to the 401(k) plan is consistent with the rights and limitations provided in the CBA, the grievance falls squarely within the broad language of the exception. Defendant's motion to compel arbitration, therefore, is denied.

### III. Conclusion

For the reasons above, Defendant's motion to compel arbitration is denied, and Plaintiff's cross motion is granted. An appropriate Order accompanies this Opinion.

/s/ Douglas E. Arpert  
DOUGLAS E. ARPERT  
United States Magistrate Judge

Dated: December 9, 2015

7